THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOSEPH GREELEY GOKEY, Appellant.

Third Department, July 9, 1956.

*John P. Judge* for appellant.

*Thomas R. North, District Attorney,* for respondent.

Coon, J. In addition to the formal allegations of operating a motor vehicle in a reckless and culpably negligent manner causing a death, the essence of the indictment upon which the defendant has been convicted charges that defendant " did operate said vehicle to his left of the center of a public highway, while intoxicated ".

On July 2, 1955 at about four o'clock in the afternoon, defendant was driving a Chevrolet stake body truck in which he was the sole occupant, in a westerly direction on Route 11 between Mooers, New York, and Champlain, New York. Walter Alford was driving a Chrysler sedan, in which his wife, two daughters and a daughter-in-law were passengers, in an easterly direction. The two vehicles collided, and Alford was killed. The accident happened on a macadam highway 22 feet wide, which was dry and straight, and the weather was good. The vehicles did not meet head-on but came together at an angle at about the left front wheel of each vehicle. After the accident defendant's truck was on its own side of the highway, headed in the direction in which it had been proceeding, and the Alford car was headed diagonally back in the direction from which it came, with the rear end off the pavement, on its own side of the highway.

Alford's wife, who was seated in the middle of the front seat next to the driver, was still confined to the hospital at the time of the trial and did not testify. A daughter, seated on the right side of the front seat, and another daughter seated on the right side of the rear seat, did not see defendant's truck until just an instant prior to the accident, when, they testified, it came diagonally toward them and struck them while the Alford car was on its own side of the center line. The daughter-in-law, who was seated on the left side of the rear seat directly behind the driver, testified that she saw the truck about 300 feet away on its wrong side of the road; that it returned to its own side, and that when they were about a car length away from it, it again came toward them diagonally and struck them at about the left front wheel. All three of these witnesses have civil

suits pending against defendant. The only direct evidence as to the speed of the vehicles is that the Alford car was going not more than 40 miles per hour, and that the defendant's truck was going 25 to 30 miles per hour. Investigating troopers found a gouge mark in the pavement which began four feet to the south of the center line and led to the left front corner of the Alford car, which had dropped to the pavement because of a broken wheel. The People attach much importance to this mark as demonstrating that the collision took place to the south of the center line. Of course, it is important evidence on that subject, but is by no means conclusive, because the force of the impact itself may have changed the position of the vehicles before the metal which made the gouge mark dropped to the surface of the road. The evidence is that the Alford car did not change its speed at any time; that no horn was blown; that it did not change its course until immediately prior to the collision, when it turned to the right " quick." This is a brief summary of all the evidence relating to the accident itself.

On the question of intoxication, it appears that the defendant left a tavern known as Twin Bridge Tavern, about a mile and a half east of the scene of the accident, a short time prior to the accident. The People called as witnesses two patrons of the tavern, a woman who was seated in a car parked outside of it, and the bartender. The bartender testified that he saw the defendant have one " Tom Collins." None of the other witnesses testified to seeing defendant have anything to drink, and no witness testified that defendant was intoxicated, although there is testimony that there were fifteen or twenty patrons in the tavern at the time. The bartender testified that defendant did not appear to be drunk. The People's witnesses testified, in substance, that defendant was noisy, talking loud, dancing and jumping around while in the tavern. There is evidence that he customarily acted that way, whether or not he was drinking. The People's witnesses are in conflict as to the manner in which defendant left the tavern. One says that the bartender and another man helped him out the door and to his truck by holding him under the arms. Another says that the bartender and another man walked to the door with him and then came back, but did not assist him. The bartender denies that he did either, but that he told defendant he had better go home because he was " fooling around " and was too boisterous.

It appears that defendant was also injured in the accident, and that while he was conscious and in the emergency room at the hospital, a doctor drew a sample of his blood and gave it to a State trooper. It does not appear in the record whether the

blood was ever tested for alcoholic content, or if it was tested, the result.

We do not deem it necessary to review the evidence in more detail and give this brief résumé only to indicate that the evidence of defendant's guilt is not so clear that any error at the trial may be disregarded as technical under section 542 of the Code of Criminal Procedure, as urged by the district attorney. (*People* v. *Carborano*, 301 N. Y. 39.)

We now come to what we consider a reversible error. The district attorney persistently inquired of several witnesses, over objections, about car keys until he finally elicited the fact that the defendant's truck keys had been at the tavern and that he had called for them the morning of the accident. Then followed, on direct examination by the district attorney: " Q. Do you know how the keys happened to be there? A. He would never drive when drinking, he had too much. Q. That was the night before? A. That's right. Mr. Judge: I move to strike that out about the night before. The Court: Yes, I think that may go out, the jury disregard it." Upon redirect examination the district attorney again pursued the subject until it led to this point: " Q. Whenever he was — when he was too drunk, he threw the keys, threw them to you the night before? A. He didn't throw them to me, he threw them to Mrs. Sharkey. Mr. Judge: I would like to have a continuous objection to ' the night before.' The Court: You may."

Defendant was charged with being intoxicated at 4 o'clock in the afternoon on July 2, when the accident occurred. No attempt was made to show that he had continued to drink since the day before or that his condition remained the same as the day before. Consequently, his condition on the day before or the night before or on any previous occasion was entirely irrelevant to the issue being tried. The record indicates a persistent and calculated attempt, which eventually proved successful, to get before the jury the fact that defendant had been intoxicated the night before and that his truck keys remained at the tavern until at least the following morning. Under the circumstances in this record such evidence was improper and highly prejudicial and may well have blurred the real issue and confused the jury to a point which deprived the defendant of a fair trial. (*People* v. *Carborano*, 301 N. Y. 39, *supra.*)

We note in passing that nowhere in the Judge's charge was intoxication defined. Under the circumstances of this case it was important that the jury be advised of the legal definition applicable and not be left to its own conception which might be at variance with the legal definition.

Defendant was sentenced to one and one-half to five years in State prison, which he is now serving. He has no previous criminal record. In the interest of justice he is entitled to a new trial.

The judgment should be reversed, on the law and the facts, and a new trial ordered.

FOSTER, P. J., BERGAN, HALPERN and GIBSON, JJ., concur.

Judgment reversed, on the law and facts, and a new trial ordered.